LARRY GORDON BRAXTON v. ANCO ELECTRIC, INC.

No. 614PA90

(Filed 7 November 1991)

1. **Master and Servant § 89 (NCI3d)— employee injury—action against third-party subcontractor**

    Under North Carolina law, an employee who is injured by the negligence of a third-party subcontractor may bring a negligence action against that subcontractor because such a subcontractor is deemed not to be a "statutory employer" of the plaintiff and therefore is not shielded from liability by the "exclusive remedy" bar of our workers' compensation statute.

    **Am Jur 2d, Workmen's Compensation § 77.**

2. **Courts § 147 (NCI4th); Master and Servant § 87 (NCI3d)— employee injured in Virginia—North Carolina workers' compensation benefits—propriety of action against third-party subcontractor—application of North Carolina law**

    The workers' compensation law of North Carolina rather than of Virginia governs the question of whether an employee injured in Virginia by the negligence of a third-party subcontractor may bring a negligence action against the subcontractor where all the parties are North Carolina residents, plaintiff's employment contract originated in North Carolina, and plaintiff received benefits pursuant to the North Carolina workers' compensation laws, since (1) plaintiff, as a North Carolina worker covered by its workers' compensation statute, is entitled to the protections afforded by our statute with regard to the question of whether he has traded away his right to sue in this situation in return for collecting workers' compensation benefits; (2) North Carolina's interests in implementing the protections afforded by our statute are paramount; and (3) applying the *renvoi* doctrine, a Virginia court would find that the law of North Carolina, under which plaintiff became covered by workers' compensation and under which he received benefits, would allow the suit against an allegedly negligent third-party tortfeasor. Therefore, plaintiff could bring a negligence action against the third-party subcontractor even though such an action would be barred under Virginia law.

BRAXTON v. ANCO ELECTRIC, INC.

[330 N.C. 124 (1991)]

Am Jur 2d, Conflict of Law § 4; Workmen's Compensation §§ 77, 86, 88.

Justice MEYER dissenting.

ON defendant Anco Electric, Inc.'s petition for discretionary review of the decision of the Court of Appeals, 100 N.C. App. 635, 397 S.E.2d 640 (1991), which reversed the judgment of *Bailey, J.*, granting the defendant's motion to dismiss under N.C. R. Civ. P. 12(b)(6), at the 17 November 1989 session of Superior Court, WAKE County. Heard in the Supreme Court on 14 October 1991.

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by David H. Batten, for defendant-appellant.*

*Edelstein & Payne, by Steven R. Edelstein; and Patterson, Harkavy, Lawrence & Van Noppen, by Donnell Van Noppen, III, for plaintiff-appellee.*

MARTIN, Justice.

The plaintiff, Larry Gordon Braxton, a resident of Raleigh, North Carolina brought this tort action against the defendant, Anco Electric, Inc., on 22 February 1989, alleging that defendant's negligence had proximately caused his injury on a construction site where he was working, and seeking punitive and compensatory damages.

Mr. Braxton was employed as a plumber's helper by Dubberly & Son Plumbing, a North Carolina corporation and a subcontractor of Bailey and Associates, Inc., another North Carolina corporation and general contractor engaged in the construction of the South Hampton Shopping Center in Franklin, Virginia. The defendant, also a North Carolina corporation, was an electrical subcontractor of Bailey and Associates, Inc. for this project.

The plaintiff alleged that as he climbed a ladder in a building on the construction site in Virginia, he came into contact with an electrical wire, sending an electrical shock through his body and causing him to fall. The plaintiff alleged that defendant negligently caused the electrical wire to become exposed and that defendant was negligent in the installation, inspection, and utilization of electrical equipment, and in its failure to give adequate warning for the protection of the plaintiff.

BRAXTON v. ANCO ELECTRIC, INC.

[330 N.C. 124 (1991)]

The plaintiff received workers' compensation benefits pursuant to the North Carolina Workers' Compensation Act for his injuries.

On defendant's motion pursuant to N.C. R. Civ. P. 12(b)(6), the trial court ruled that because Virginia substantive law bars actions against another subcontractor by an employee for injuries negligently caused by an employee of such subcontractor, the plaintiff's action was barred pursuant to the doctrine of *lex loci delicti commissi*. The Court of Appeals reversed, recognizing that Virginia law does bar such actions, but holding that North Carolina substantive law should apply because of overriding state interests and public policy reasons. We affirm, but for partially different and additional reasons.

[1] In the present case we begin with a common law tort action for the personal injury of a North Carolina citizen. Since the injury occurred in the course of the plaintiff's employment, we must look to statutory law on workers' compensation to see whether there exists any prohibition or bar to such suit. Under North Carolina law, we find that an employee who is injured by the negligence of a third-party subcontractor may bring a negligence action against that subcontractor because in interpreting our statute North Carolina courts have deemed such a subcontractor not to be a "statutory employer" of the plaintiff and therefore not shielded from liability by the "exclusive remedy bar" of our workers' compensation statute. *See Lewis v. Barnhill*, 267 N.C. 457, 148 S.E.2d 536 (1966); *Weaver v. Bennett*, 259 N.C. 16, 129 S.E.2d 610 (1963).

However, since the injury occurred in the Commonwealth of Virginia, the case presents a conflict of laws question as to which state's compensation law to apply in determining whether plaintiff's cause of action is barred. The conflict arises from the divergence between our statute and the Commonwealth of Virginia's workers' compensation statute, Code § 65.1-40, which extends the definition of "statutory employer" to include all subcontractors working under the general contractor's umbrella, thus shielding from liability a third-party tortfeasor such as the defendant in the present case.

Thus, this Court is faced with a novel question of first impression. The question is a threshold one of whether to apply Virginia's or North Carolina's compensation law in determining whether the action is statutorily barred. Under the law of Virginia, the action is barred; under the law of North Carolina, it is not. We do not hesitate in holding that as to the tort law controlling the rights

**BRAXTON v. ANCO ELECTRIC, INC.**

[330 N.C. 124 (1991)]

of the litigants in the lawsuit allowed by this decision, the long-established doctrine of *lex loci delicti commissi* applies, and Virginia law controls. *Boudreau v. Baughman*, 322 N.C. 331, 368 S.E.2d 849 (1988); *Henry v. Henry*, 291 N.C. 156, 229 S.E.2d 158 (1976); *Young v. R.R.*, 266 N.C. 458, 141 S.E.2d 278 (1965). But in regard to the "exclusive remedy bar" imposed by statute, we turn to our own statute for an answer.

[2] We hold that plaintiff, as a North Carolina worker covered by its workers' compensation statute, is entitled to the protections afforded by our statute with regard to the question of whether his cause of action is eliminated by a particular workers' compensation plan. The question we decide arises in the context of the "mutual concessions" inherent in the workers' compensation design wherein an employee trades off his common law right of recovery in tort for the assurance that any work-related injury, regardless of fault, will be compensated. In this regard we view plaintiff as a beneficiary of the particular bargain which North Carolina has struck between the rights of employees as potential plaintiffs seeking to recover in tort for work-related injuries and the rights of employers and third parties as potential tortfeasors seeking to escape liability by virtue of the blanket provision of compensation for such injuries. To determine whether the law says that plaintiff, in return for collecting workers' compensation benefits, has traded away his right to sue in this situation, we look to the law which guarantees his receipt of those benefits, which is the law of North Carolina.

Public policy considerations point to the same result. All the parties are North Carolina citizens; the plaintiff's contract of employment and the contracts giving rise to the workers' compensation coverage were signed here; and the plaintiff was receiving benefits under our workers' compensation statute. Under these circumstances, North Carolina's interests in implementing the protections afforded by our statute are paramount. Mr. Braxton's temporary presence in Virginia so as to carry out his employment contract does not strip him of the rights he otherwise enjoys under the North Carolina workers' compensation statute with regard to the breadth of our state's exclusive remedy bar on common law actions in tort.

Various courts when faced with conflict of laws questions arising from multistate workers' compensation situations with nonemployer tortfeasors have resolved them similarly. *See, e.g.,*

BRAXTON v. ANCO ELECTRIC, INC.

[330 N.C. 124 (1991)]

*Hynes v. Indian Trails, Inc.*, 181 F.2d 668 (7th Cir. 1950); *Liberty Mutual Insurance Co. v. Goode Construction Co.*, 97 F. Supp. 316 (E.D. Va. 1951); *Miller v. Yellow Cab Co.*, 31 N.E.2d 406 (Ill. App. Ct. 1941).

Both parties argue *Leonard v. Johns-Manville Sales Corp.*, 309 N.C. 91, 305 S.E.2d 528 (1983), in support of their causes. There we considered a conflict of laws question as to whether the workers' compensation law of North Carolina or Virginia, as the place of injury, would govern the issue of the third-party tortfeasor's ability to assert a *pro tanto* defense against the employer. In *Johns-Manville* this Court looked to the law of Virginia, but found that Virginia had no law controlling the issue. Therefore, rather than speculating on what law Virginia might adopt, this Court applied its own statutory law as to *pro tanto* defenses.

In contrast to *Johns-Manville*, the Supreme Court of Virginia has actually ruled on a case like the one at bar. Our holding is also consistent with that ruling. In *Solomon v. Call*, 166 S.E. 467 (Va. 1932), a traveling salesman from Pennsylvania was injured due to the negligence of certain third parties in an automobile accident while on assignment in Virginia. Mr. Solomon received workers' compensation benefits from Pennsylvania. The same conflict of laws arose between Virginia's bar of suits against third-party tortfeasors and Pennsylvania's adherence to common law in this regard. Although the accident occurred in Virginia, the Virginia court decided to apply Pennsylvania law and allow the claim, based on the facts that "[t]he plaintiff's employment was under a Pennsylvania contract, with a Pennsylvania employer and embraced within the terms of the Workmen's Compensation Act of that state. His contract of employment was entirely foreign to the state of Virginia and clearly outside of the Vriginia [sic] Workmen's Compensation Act." *Solomon v. Call*, 166 S.E. 467, 468 (Va.). The same is true in the present case. Moreover, here too,

> [N]ot being within the Virginia act and not having accepted an award thereunder, [the plaintiff] is not prohibited by the act nor by common law from maintaining his action for the injuries received against the negligent third person or persons responsible for them. He could not have obtained any of the benefits of the Virginia act, and he is not required to suffer and bear the prohibition of it. The prohibition of . . . the Virginia act does not apply to him.

*Id.* at 469.

**BRAXTON v. ANCO ELECTRIC, INC.**

[330 N.C. 124 (1991)]

Thus, the workers' compensation law of North Carolina governs the question of whether this action has been precluded by statute; it has not. The Court of Appeals was correct in reversing the judgment of the trial court dismissing the plaintiff's case.

We also arrive at the same conclusion when applying classic conflict of laws *renvoi*. *See generally* Rhoda S. Barish, *Renvoi and the Modern Approaches to Choice-of-Law*, 30 Am. U. L. Rev. 1049 (Summer 1981); Erwin N. Griswold, *Renvoi Revisited*, 51 Harv. L. Rev. 1165 (1938); David E. Seidelson, *The Americanization of Renvoi*, 7 Duq. L. Rev. 201 (1968-69).

We begin with the traditional doctrine of *lex loci delicti commissi*, which takes us to Virginia law. Taking into consideration the whole law of Virginia, including its conflict of laws jurisprudence, we inquire as to what Virginia's court of last resort would do when faced with the question of an injured employee's ability to sue a third-party tortfeasor in a case in which the injury occurred in one state but the employment contract(s), the residences of the parties, and the workers' compensation benefits were associated with another jurisdiction. To resolve this issue, Virginia's conflict of laws policy looks to the workers' compensation law of the state in which the plaintiff was covered by the act and in which he received benefits. *Solomon v. Call*, 166 S.E. 467 (Va.). In so doing, the Virginia court would find that in the present case, the law of North Carolina under which the plaintiff became covered by workers' compensation and under which he received benefits, would allow the suit against an allegedly negligent third-party tortfeasor. Applying *renvoi*, we hold that plaintiff stated a cause of action under N.C. R. Civ. P. 12(b)(6), and we affirm the decision of the Court of Appeals.

Affirmed.

Justice MEYER dissenting.

I dissent from the opinion of the majority.

It is undisputed that under the Virginia Workers' Compensation Act, an injured employee under the circumstances presented in this case is barred from suing a third party in tort for injuries deriving from employment. Va. Code Ann. § 65.1-40 (Michie 1987). However, it is equally clear that this state's Workers' Compensa-

tion Act does not bar such an action. N.C.G.S. § 97-10.2 (1985); *Lovette v. Lloyd*, 236 N.C. 663, 73 S.E.2d 886 (1953).

While conceding that, in terms of strict tort law, the doctrine of *lex loci delicti commissi* requires that the law of Virginia would control, the majority nevertheless concludes that, because the North Carolina workers' compensation law does not bar such an action, North Carolina law controls. The majority claims that this is so for two reasons. The first stems from the majority's perception of the expansive scope of our workers' compensation law. According to the majority, the North Carolina Workers' Compensation Act involves " 'mutual concessions' . . . wherein an employee trades off his common law right of recovery in tort for the assurance that any work-related injury . . . will be compensated." The majority reasons that because plaintiff has received benefits under the North Carolina Act, plaintiff is a "beneficiary" of North Carolina workers' compensation law. Second, according to the majority, "public policy considerations" require that North Carolina law, which does not expressly bar negligence actions against third-party subcontractors, controls because (1) all the parties are North Carolina citizens, (2) plaintiff's employment contract originated in North Carolina, and (3) plaintiff received benefits pursuant to North Carolina workers' compensation law. The majority thus concludes that the interests of North Carolina are "paramount."

While it is true that N.C.G.S. § 97-10.2 envisions a trade-off such as that recognized by the majority, this fact does not answer the conflict of laws question before the Court. The majority's assertion that plaintiff is a "beneficiary" of the trade-off merely restates the obvious — that North Carolina workers' compensation law allows plaintiff to recover benefits under the Act. The majority next points out that numerous circumstances pertain to North Carolina and that therefore North Carolina's interests are paramount in ensuring that its workers' rights under the Act be protected. Aside from being circular, this reasoning amounts to a bald, yet unstated, disavowal of our well-settled choice of laws doctrine.

This Court has long and consistently adhered to the rule of *lex loci*. Ironically, Justice Martin, author of the majority opinion, just recently voiced our continued allegiance to the doctrine.

> [U]nder North Carolina law, when the injury giving rise to a negligence . . . claim occurs in another state, the law of

that state governs resolution of the substantive issues in the controversy.

> This Court has consistently adhered to the lex loci rule in tort actions. . . . We see no reason to abandon this well-settled rule at this time. It is an objective and convenient approach which continues to afford certainty, uniformity, and predictability of outcome in choice of law decisions.

*Boudreau v. Baughman,* 322 N.C. 331, 335-36, 368 S.E.2d 849, 854 (1988) (citations omitted). Today, notwithstanding our recent adherence to the rule, the majority appears to adopt what may be best categorized as a "most significant relationship" test, a view at marked variance with *lex loci.*[1] Using its new test, the majority is able to downplay the historic significance of the situs of the injury and correspondingly emphasize the significance of hitherto unheeded factors in the conflict of laws analysis. Such a *sub silentio* rejection of a well-settled doctrine of law can only lead to the uncertainty, lack of uniformity, and unpredictability contemplated by the *Boudreau* Court.

Lacking any certain precedent for this shift, and apparently loathe to acknowledge its disavowal of *lex loci,* the majority adopts a tortured reading of our decision in *Leonard v. Johns-Manville Sales Corp.,* 309 N.C. 91, 305 S.E.2d 528 (1983). The *Leonard* Court, while affirming its adherence to *lex loci,* was faced with a very different set of facts than that with which we are faced today. There, plaintiff was injured in Virginia and obtained workers' compensation benefits under Virginia law. Subsequent to his death, his widow brought a third-party tort action in North Carolina against manufacturers of asbestos. In North Carolina, in a negligence action by an injured employee, the third-party tort-feasor can allege as a *pro tanto* defense the concurring negligence of the employer. *See* N.C.G.S. § 97-10.2 (1991). Virginia, however, had no law either permitting or denying such defenses under the circumstances. We therefore concluded that North Carolina law applied even though plaintiff received workers' compensation benefits from Virginia, stating that "in the absence of any Virginia law one way or the

---

1. This test was first advanced by the American Law Institute in 1971. Gregory E. Smith, *Choice of Law in the United States,* 38 Hastings L.J. 1041, 1044-46 (1987). *See* Restatement (Second) Conflict of Laws §§ 6, 145(2), 146, 188(2) (1981). In 1976, this Court explicitly rejected an opportunity to adopt the Second Restatement approach. *See Henry v. Henry,* 291 N.C. 156, 163-64, 229 S.E.2d 158, 163 (1976).

BRAXTON v. ANCO ELECTRIC, INC.

[330 N.C. 124 (1991)]

other on this issue, the rule of *lex loci delicti commissi* does not apply." *Leonard,* 309 N.C. at 96, 305 S.E.2d at 352. Further, in a footnote, we offered that "even if Virginia law clearly prohibited an employer's negligence to be litigated for the limited purposes allowed under North Carolina law, . . . the governmental interests and public policy of our state would require us to abjure the *lex loci delicti commissi* rule." *Id.* at 96 n.1, 305 S.E.2d at 352 n.1.

Thus, upon close examination, *Leonard* provides scant support for the majority's stance. While the opinion did deviate from a strict application of *lex loci,* it did so in a context bereft of alternative state law. Therefore, in *Leonard,* there was no way that Virginia law could apply because the Virginia law did not speak to the issue. It was only because of the vacuum in Virginia law that North Carolina law was applied in that case. Moreover, the majority's contention that *Leonard* provides a public policy exception in choice of laws analysis lacks support in the law. The *Leonard* Court's assertion, contained in a footnote, concerned matters not implicated by the facts at bar and therefore amounted to nothing more than dictum, rendering the assertion worthless as precedential value. *Hayes v. Wilmington,* 243 N.C. 525, 91 S.E.2d 673 (1956).

I must also note my reservations concerning the majority's usage of the *renvoi* doctrine. It is indeed ironic that the majority rushes to embrace this anachronistic and much-criticized[2] doctrine, while at the same time renouncing the well-settled body of law surrounding *lex loci.* Surely the majority cannot escape the irony of its application of *renvoi* insofar as it reinforces the importance of the law of the situs, requiring as it does that Virginia's conflict of laws *policy* deserves deference, but not its *substantive law.* The majority places itself in the shoes of the Virginia court and prophesies that, because of plaintiff's eligibility for and receipt of North Carolina workers' compensation benefits, that court would apply North Carolina law rather than the law of Virginia. This convenient remission to North Carolina law by the majority cannot be taken as anything less than result-oriented.

---

2. *See* Rhoda S. Barish, *Renvoi and the Modern Approaches to Choice of Law,* 30 Am. U. L. Rev. 1049, 1065-68 (1981); Albert A. Ehrenzweig, *Conflict of Laws* 336 (1962); Erwin S. Griswold, *Renvoi Revisited,* 51 Harv. L. Rev. 1165, 1167 n.8 (1938).

Finally, the position adopted by the majority is at odds with the traditional view of other American jurisdictions.[3]

For the foregoing reasons, I respectfully dissent from the opinion of the majority.

---

3. *See* Robert A. Leflar, *American Conflicts Law* 466 n.15 (4th ed. 1986); Restatement (Second) Conflict of Laws §§ 183-185 (1981); 81 Am. Jur. 2d *Workmen's Compensation* §§ 63, 86, 88 (1976 & Supp. 1991).